IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SYLVINA T.,[1]

        Plaintiff,

       v.                                                                 Civ. No. 21-429 MV/SCY

KILOLO KIJAKAZI, Acting Commissioner of
Social Security,

        Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Plaintiff argues that the Commissioner committed error when she denied her claim for disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 401-434. Plaintiff challenges the ALJ's evaluation of two treating physician opinions. On February 25, 2022, the Honorable Martha Vázquez referred this matter to me for proposed findings and a recommended disposition under 28 U.S.C. § 636(b). Doc. 23. I recommend that the Court grant Plaintiff's Motion To Reverse And Remand For A Rehearing With Supporting Memorandum, Doc. 20, and remand for further proceedings.[2]

## APPLICABLE LAW

    A.    <u>Disability Determination Process</u>

An individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

[2] The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). I reserve discussion of the background, procedural history, and medical records relevant to this appeal for the analysis.

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also id.* § 1382c(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory criteria as follows:

(1)  At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[3] If the claimant is engaged in substantial gainful activity, she is not disabled regardless of her medical condition.

(2)  At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment or combination of impairments that is severe and meets the duration requirement, she is not disabled.

(3)  At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

(4)  If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [the claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of the claimant's past work. Third, the ALJ determines whether, given the claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

---

[3] "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). The claimant's "[w]ork may be substantial even if it is done on a part-time basis or if [she] doe[es] less, get[s] paid less, or ha[s] less responsibility than when [she] worked before." *Id.* "Gainful work activity is work activity that [the claimant] do[es] for pay or profit." *Id.* §§ 404.1572(b), 416.972(b).

2

> (5) If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

B.      Standard of Review

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at 800-01. In making these determinations, the court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "Substantial evidence . . . is 'more

than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118 (internal quotation marks omitted), or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). Therefore, although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence" and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (internal quotation marks omitted). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court "should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

## ANALYSIS

Plaintiff argues that the ALJ improperly failed to explain his rejection of moderate nonexertional limitations in a treating psychologist's opinion, in derogation of *Haga v. Astrue*, 482 F.3d 1205 (10th Cir. 2007). Plaintiff also challenges the ALJ's rejection of the opinion of Plaintiff's treating orthopedic surgeon that Plaintiff is restricted to less than sedentary work. I

4

agree with Plaintiff on both arguments, and as a result, recommend the Court reverse and remand for a rehearing.

    A.    <u>Legal Standard</u>

The ALJ is required to evaluate every medical opinion he receives that could have an effect on the RFC. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161-62 (10th Cir. 2012); *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003). For claims filed before March 27, 2017, a unique two-step rule applies to the opinions of treating physicians (acceptable medical sources who provide or have provided the claimant with medical treatment and who have an ongoing relationship with the claimant).

First, the ALJ must determine whether the opinion is entitled to "controlling weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." *Id.* (internal quotation marks omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Id.* But "[i]n choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence . . . ." *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (internal quotation marks omitted).

If it is not given controlling weight, "at the second step in the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). The ALJ is not required to "apply expressly each of the six relevant factors in deciding

what weight to give a medical opinion." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Rather, the decision need only be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (internal quotation marks omitted). The Tenth Circuit has also expressed this as a requirement that the ALJ provide "specific and legitimate reasons" for rejecting an opinion. *Doyal*, 331 F.3d at 764; *Watkins*, 350 F.3d at 1301. The ALJ's reasons are reviewed for substantial evidence. *Doyal*, 331 F.3d at 764.

    B.    <u>Dr. Chang</u>

Plaintiff's treating psychologist, Dr. Robert Chang, completed a Medical Assessment of Ability to do Work-Related Activities (Mental) form on January 30, 2019. AR 826-27. He mostly found "slight" limitations in the four domains of nonexertional functioning. However, he checked the "moderate" boxes for limitations on several nonexertional abilities, including the ability to "Complete a normal workday and workweek without interruptions from psychological based symptoms and to perform at a consistent pace without [an] unreasonable number and length of rest periods." AR 826.

The ALJ stated that Dr. Chang's "opinion deserves great weight." AR 885. The ALJ noted that some testing showed "limited cognitive function," but found that other evidence of record, such as "several medical notes show[ing] normal overall cognitive function," is "consistent with moderate rather than marked limitations." *Id.* The ALJ assigned an RFC for light exertional work "limited to understanding, remembering, and carrying out simple, routine tasks, making simple work-related decisions, dealing with changes in a routine work setting, [and] maintaining concentration, persistence, and pace for at least [a] two hour interval." AR 877.

Citing *Haga v. Astrue*, 482 F.3d 1205 (10th Cir. 2007), Plaintiff argues that the ALJ failed to discuss, or otherwise incorporate, Dr. Chang's moderate limitation on the ability to complete a normal workday and workweek without interruptions from psychological based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods. Doc. 20 at 19-21.

In *Haga*, a state agency examining psychological consultant "fill[ed] out a mental RFC form, on which he marked appellant moderately impaired in seven out of ten functional categories." 482 F.3d at 1207. While the ALJ's RFC incorporated three of these moderate limitations, it did not incorporate the other four. *Id*. Further, the ALJ did not provide an explanation for rejecting the remaining four moderate limitations and "the evidence on which the ALJ explicitly relied in his decision [did] not imply an explanation." *Id*.

On appeal, the Tenth Circuit found that "it is simply unexplained why the ALJ adopted some of [the doctor]'s restrictions but not others." *Id*. at 1208. Although an "ALJ is entitled to resolve any conflicts in the record," the court stressed that an ALJ must actually identify the evidence that conflicts with the doctor's medical opinion or RFC assessment. *Id*. The Tenth Circuit reinforced this point later that same year when it applied *Haga* to remand where the "ALJ erred in accepting some of the moderate limitations in the Mental RFC form completed by . . . a nonexamining physician, but rejecting others without discussion." *Frantz v. Astrue*, 509 F.3d 1299, 1302-03 (10th Cir. 2007).

The Commissioner responds that the ALJ followed *Haga* because he *did* incorporate all of Dr. Chang's assessed limitations into the RFC by limiting Plaintiff to unskilled work. Doc. 25 at 5-6. Social Security regulations "define[] a 'moderate' limitation in mental functioning in a work setting as one in which the claimant's 'functioning in this area independently,

7

appropriately, effectively, and on a sustained basis is fair.'" *Fannin v. Comm'r, SSA*, 857 F. App'x 445, 446 n.3, 448 (10th Cir. 2021) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00.F.2.c). Therefore, the Commissioner argues that moderate limitations in any domain of functioning can be accounted for by a limitation to unskilled work. Doc. 25 at 5-6.

I do not agree with the Commissioner that a restriction to unskilled work automatically accounts for any and all moderate nonexertional limitations. The Tenth Circuit instructs that unskilled work *may* account for certain limitations, but that it does not necessarily do so. *Chapo v. Astrue*, 682 F.3d 1285, 1290 n.3 (10th Cir. 2012) (a claimant's mental functions and issues of skill transfer may often have little to do with each other, as some mental functions are "general prerequisites for most work at any skill level"); *Vigil v. Colvin*, 805 F.3d 1199, 1203-04 (10th Cir. 2015) (unskilled work accounted for evidence that the claimant had some unspecified problems with concentration, persistence, and pace such that he could not be expected to perform *complex* tasks).

Instead, this appears to be a case-specific assessment that depends on the opinions and the evidence in a particular case. In *Haga* itself, the Tenth Circuit remarked that context matters. 482 F.3d at 1208 ("Appellant shows in the reply brief, however, that the government has taken the definition for 'moderate' on the mental RFC form out of context—a moderate impairment is not the same as no impairment at all, and Dr. Rawlings clearly intended to indicate impairments on this form."). I agree with Plaintiff that the ALJ should evaluate a case according to what the *doctor* said about the claimant's impairments, rather than how Social Security regulations define the term "moderate," unless there is indication these regulations are relevant to the doctor's opinion.

The Commissioner relies on *Smith v. Colvin*, 821 F.3d 1264 (10th Cir. 2016). That case dealt with a particular agency form that incorporated both check boxes and a narrative opinion (one that differs from the form Dr. Chang completed). *Id.* at 1268 n.1. "[T]he form explained that the [check-box] questions provided only an aid to assess [the claimant]'s capacity. The form instructed [the doctor] to assess the residual functional capacity in a narrative." *Id.* The court must "compare the administrative law judge's findings to [the doctor]'s opinion on residual functional capacity, not her notations of moderate limitations." *Id.* at 1269 n.2. Because *Smith* cited the particular nature of the form and the instructions on the form as support for its holding, I view *Smith* as supporting the proposition that context of the doctor's opinion matters, rather than holding that unskilled work automatically accounts for all moderate nonexertional limitations in all contexts. This interpretation of *Smith* is consistent with *Haga*, which provides no support for the notion that unskilled work automatically accounts for all moderate nonexertional limitations.

To that end, Plaintiff points out that Dr. Chang's form indicates that a "moderate" limitation is "[a] limitation that seriously interferes with the individual's ability to perform the designated activity on a regular and sustained basis . . . . [T]he individual should not be placed in a job setting where this mental function is critical to job performance or to job purpose." AR 826. Unlike in *Smith*, Dr. Chang included no additional opinions on the RFC (that is, the nature of the work Plaintiff can perform despite her limitations). I agree with Plaintiff that, reading the form as a whole, Dr. Chang assessed limitations in Plaintiff's work-related abilities that are not accounted for by the RFC for "simple, routine tasks." In other words, Dr. Chang opined that Plaintiff should not be placed in a job setting where "the ability to complete a normal workday and workweek without interruptions from psychological based symptoms and to perform at a

consistent pace without unreasonable number and length of rest periods" is critical to job performance. But this ability is needed for all work, even simple work. Social Security Administration Program Operations Manual System ("POMS"), DI 25020.010, § B(2)(a) & (d).

Therefore, I agree with Plaintiff that *Haga* applies to this case. The ALJ could reject this limitation and then provide a valid basis for the rejection. Or, the ALJ could incorporate the limitation into the RFC by finding that Plaintiff cannot perform in a job setting that requires the ability to complete a normal workday and workweek without interruptions from psychological based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods.[4] Here, the ALJ did neither.

I note that *Haga* briefly discussed a possible exception to its rule—when the ALJ "explicitly relied" on evidence in his decision that could "imply an explanation for rejecting any of [the doctor's] restrictions on the mental RFC form." 482 F.3d at 1208. The ALJ here did find, in the context of evaluating Dr. Chang's opinion, that the evidence did not support a more restrictive RFC:

> [S]everal medical notes show normal overall cognitive function regarding perception, orientation, language, thought process, affect, fund of knowledge, attention, recent and remote memory, and speech on January 30, 2019 (28F/52; 34F/78), February 27, 2019 (28F/47), April 2, 2019 (28F/42), May 1, 2019 (28F/37), July 1, 2019 (28F/27), August 1, 2019 (28F/22), September 12, 2019 (28F/17), October 21, 2019 (28F/13), November 25, 2019 (28F/8), January 23, 2020 (28F/2), December 8, 2020 (34F/210), January 25, 2021 (34F/217). These observations, along with the claimant's diagnoses, are consistent with moderate rather than marked limitations.

---

[4] Here, as a practical matter, the ALJ likely would not be able to incorporate this particular limitation into an RFC that allows for any type of employment. That is because, looking at the very language of this limitation, anyone with this limitation by definition cannot "perform at a consistent pace without unreasonable number and length of rest periods." In other words, to find that this limitation applies is to also necessarily find that the claimant must have rest periods so frequently and for so long, that the needed rest periods can only be characterized as "unreasonable."

10

AR 885.

This evidence of "normal overall cognitive function" could potentially "imply an explanation" for rejecting Dr. Chang's limitations. However, the last sentence ties the analysis back to "moderate" limitations. It is possible that the ALJ intended to invoke the Commissioner's own definition of "moderate" in the regulations when reaching this conclusion. But the ALJ did not say that, and *Haga* clearly holds that even moderate limitations must be explained or incorporated into the RFC. Even accepting the ALJ's reasoning, the ALJ found Plaintiff to have moderate limitations, but did not explain what these limitations mean or incorporate them into the RFC. Therefore, this analysis remains error under *Haga*.

    C.    <u>Dr. Veitch</u>

Dr. Veitch has been Plaintiff's treating orthopedic surgeon since early 2018, when Dr. Veitch, after reviewing an MRI, performed a right knee meniscal root repair and right knee arthroscopy. AR 779-82. In fall 2018, Dr. Veitch performed a knee injection. AR 786. In January 2019, Dr. Veitch reviewed a second MRI and was concerned that the medial meniscal root was re-torn. AR 782. He discussed a repeat surgery but noted that the "track record of meniscal debridement for root repairs is complicated" and recommended injections instead. AR 783. He completed a series of injections over the next few weeks. AR 1418. In March 2019, he recommended that Plaintiff either continue with conservative management or have an arthroscopic surgery with partial medical meniscectomy. AR 1419. She opted for conservative management at that time. *Id.* In May, she expressed interest in knee replacement surgery. AR 1416. In November, Plaintiff and Dr. Veitch agreed she was not yet a candidate for a total knee arthroplasty and Plaintiff decided to continue with conservative treatment. AR 1414. A year later, on November 11, 2020, Dr. Veitch reviewed a third MRI which revealed mild degenerative changes and no "obvious gross failure" of the prior knee surgery but observed that "there is some

11

abnormality at the repair site." AR 1404. "She would not be a great candidate for knee replacement at this time because the level of her arthritis would not warrant such intervention." *Id.* She may be a candidate for a revision knee arthroscopy, but Dr. Veitch would not attempt to re-repair the root if it had indeed torn again after surgery. *Id.*

A couple weeks later, on November 25, Dr. Veitch completed a Medical Assessment of Ability to do Work-Related Activities (Physical), finding the following limitations:

- Occasionally lift and/or carry 10 pounds and frequently 5 pounds;
- Stand and/or walk for less than 2 hours in an 8-hour workday;
- Sit for 6 hours in an 8-hour workday;
- Operate foot controls less than occasionally on the right and occasionally on the left;
- Frequently perform all manipulative activities bilaterally; and
- Less than occasionally kneel, stoop, crouch, and crawl.

AR 1388. Dr. Veitch supported all of these limitations with the comment: "R Knee Arthritis." *Id.*

That same day, Dr. Veitch also completed a Medical Assessment of Ability to do Work-Related Activities (Non-Physical), finding moderate limitations in Plaintiff's ability to maintain regular attendance and be punctual within customary tolerances because of pain or fatigue and completing a normal workday and workweek without interruptions from pain or fatigue-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. AR 1389. He further opined that Plaintiff "must rest or lie down more than allotted break periods because of his/her pain and/or fatigue." *Id.*

The ALJ gave this opinion "little weight." He explained:

> [Dr. Veitch] limits the claimant to less than sedentary exertional work: standing and or walking for less than two hours in an eight-hour workday. I note that Dr. Veitch limits the claimant to frequent manipulative motion due to her right knee arthritis, which is illogical. He also says that due to right knee arthritis, the claimant can operate foot controls occasionally with either foot. He bases all the

12

>claimant's physical limitations on her right knee arthritis. On the mental opinion, he notes moderate mental limitations, which is not inconsistent with the residual functioning capacity and the medical evidence. The mental opinion is more consistent with the medical evidence. However, nothing on the record shows images of the back, shoulders, elbows, hips, knees, or ankles that would support restricting the claimant to less than sedentary exertional work.

AR 885.

Plaintiff challenges each of these reasons. Doc. 20 at 25-26.[5] I reject some of Plaintiff's contentions. I find that substantial evidence supports the ALJ's conclusion that the hand/arm manipulative limitations are "illogical" due to the notation of "right knee arthritis." The ALJ was justified in disregarding the manipulative limitations due to this inconsistency. Similarly, the ALJ may have been justified in disregarding the opinion on Plaintiff's *left* knee functioning based on the same reasoning, although the ALJ did not specifically say that.

However, these conclusions do not address whether the ALJ properly disregarded Dr. Veitch's opinions that *are* logically connected to Plaintiff's right knee arthritis, such as the limitations on standing, walking, carrying, operating foot controls with her right foot, kneeling, stooping, crouching, and crawling.[6] The only part of the ALJ's explanation that has anything to do with knee functioning is the sentence stating "nothing on the record shows images of the . . . knees . . . that would support restricting the claimant to less than sedentary exertional work." AR 885.

---

[5] I do not address the ALJ's assessment of Dr. Veitch's mental limitations, because Plaintiff's opening brief was based on an inadvertent misreading of the ALJ's opinion, which Plaintiff concedes in reply. Doc. 20 at 25-26; Doc. 26 at 6. Any new arguments Plaintiff raises on this topic in reply are forfeited.

[6] As the ALJ correctly observed, these limitations would restrict Plaintiff to less than sedentary exertional work and the ALJ assigned an RFC for light exertional work. Therefore, any error connected to this analysis is harmful.

As Plaintiff argues, this statement is not an accurate characterization of the medical evidence. Doc. 20 at 26. Dr. Veitch reviewed at least three MRIs and reached the conclusion that Plaintiff's knee functioning would restrict her to less than sedentary work. *See supra* pp. 11. The ALJ may not second-guess Dr. Veitch's medical assessment of that evidence. *Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004). Therefore, the only statement the ALJ made with respect to the evidence of knee functioning is based on a mischaracterization of the record. I recommend the Court reverse and remand for a proper assessment of Dr. Veitch's opinion related to Plaintiff's right knee functioning.

## CONCLUSION

For the reasons stated above, I recommend that the Court **GRANT** Plaintiff's Motion To Reverse And Remand For A Rehearing With Supporting Memorandum, Doc. 20, and remand for further proceedings.

_____
**STEVEN C. YARBROUGH**
**United States Magistrate Judge**

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**